**NO. 26-1541**

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

_____

IN RE MOTOROLA SOLUTIONS INC.

*RESPONDENT,*

_____

On Petition for a Writ of Mandamus to the United States District Court for the Northern District of Illinois

(Hon. John J. Tharp, Jr., Case No. 1:20-cr-688)

_____

## RESPONSE IN OPPOSITION TO PETITION FOR A WRIT OF MANDAMUS PURSUANT TO 18 U.S.C. § 3771(d)(3)

_____

Boyd Cloern
Leah Quadrino
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000

Rachel M. Cannon
(*Counsel of Record*)
Christopher S. Niewoehner
Brendan Hammond*
STEPTOE LLP
Suite 4700
227 W. Monroe Street
Chicago, IL 60606
312-557-1270
rcannon@steptoe.com

*application for admission forthcoming

*Counsel for Respondent Hytera Communications Corporation Ltd.*

June 3, 2026

# Circuit Rule 26.1 Disclosure Statement

Appellate Court No.:  No. 26-1541

Short Caption: In re Motorola Solutions, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Hytera Communications Corporation Ltd.

(2)     The names of all law firms whose partners or associates have appeared for the party in this case (including proceedings in the district court or before any administrative agency) or are expected to appear for the party in this court:

   Steptoe LLP

(3)     if the party or amicus is a corporation:

a.     identify all of its parent corporations, if any; and

   Hytera Communications Corporation Ltd.

b.     list any publicly held company that owns 10% or more of the party's or amicus' stock:

Hytera Communications Corporation Ltd.

Attorney's Signature:  /s/ Rachel M. Cannon            Date:  June 3, 2026

Attorney's Printed Name:  Rachel M. Cannon

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes   X   No _____

Address:    Steptoe LLP

              227 West Monroe Street, Ste. 4700, Chicago, IL 60606

Phone Number: (312) 577-1270           Fax Number:   (202) 429-3902

E-mail Address:  rcannon@steptoe.com

# Circuit Rule 26.1 Disclosure Statement

Appellate Court No.:  No. 26-1541

Short Caption: In re Motorola Solutions, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Hytera Communications Corporation Ltd.

(4)    The names of all law firms whose partners or associates have appeared for the party in this case (including proceedings in the district court or before any administrative agency) or are expected to appear for the party in this court:

Steptoe LLP

(5)    if the party or amicus is a corporation:

a.    identify all of its parent corporations, if any; and

Hytera Communications Corporation Ltd.

b.    list any publicly held company that owns 10% or more of the party's or amicus' stock:

Hytera Communications Corporation Ltd.

Attorney's Signature:  /s/ Christopher S. Niewoehner            Date:  June 3, 2026

Attorney's Printed Name:  Christopher S. Niewoehner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ____  No X___

Address:   Steptoe LLP

227 West Monroe Street, Ste. 4700, Chicago, IL 60606

Phone Number: (312) 577-1240            Fax Number:  (202) 429-3902

E-mail Address:  cniewoehner@steptoe.com

## Circuit Rule 26.1 Disclosure Statement

Appellate Court No.:  No. 26-1541

Short Caption: In re Motorola Solutions, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Hytera Communications Corporation Ltd.

(6)    The names of all law firms whose partners or associates have appeared for the party in this case (including proceedings in the district court or before any administrative agency) or are expected to appear for the party in this court:

   Steptoe LLP

(7)    if the party or amicus is a corporation:

a.    identify all of its parent corporations, if any; and

   Hytera Communications Corporation Ltd.

b.    list any publicly held company that owns 10% or more of the party's or amicus' stock:

   Hytera Communications Corporation Ltd.

Attorney's Signature:  /s/ Brendan Hammond             Date:  June 3, 2026

Attorney's Printed Name:  Brendan Hammond

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes _____ No X___

Address:   Steptoe LLP

            227 West Monroe Street, Ste. 4700, Chicago, IL 60606

Phone Number: (312) 577-1240            Fax Number:   (202) 429-3902

E-mail Address:  bhammond@steptoe.com

# Circuit Rule 26.1 Disclosure Statement

Appellate Court No.:  No. 26-1541

Short Caption: In re Motorola Solutions, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Hytera Communications Corporation Ltd.

(8)    The names of all law firms whose partners or associates have appeared for the party in this case (including proceedings in the district court or before any administrative agency) or are expected to appear for the party in this court:

Steptoe LLP

(9)    if the party or amicus is a corporation:

a.    identify all of its parent corporations, if any; and

Hytera Communications Corporation Ltd.

b.    list any publicly held company that owns 10% or more of the party's or amicus' stock:

Hytera Communications Corporation Ltd.

Attorney's Signature:  /s/ Boyd Cloern          Date: June 3, 2026

Attorney's Printed Name:  Boyd Cloern

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes _____ No X___

Address:   Steptoe LLP

1330 Connecticut Avenue, NW, Washington, DC 20036

Phone Number: (202) 429-3900          Fax Number:  (202) 429-3902

E-mail Address:  bcloern@steptoe.com

# Circuit Rule 26.1 Disclosure Statement

Appellate Court No.:  No. 26-1541

Short Caption: In re Motorola Solutions, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(10)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Hytera Communications Corporation Ltd.

(11)  The names of all law firms whose partners or associates have appeared for the party in this case (including proceedings in the district court or before any administrative agency) or are expected to appear for the party in this court:

Steptoe LLP

(12)  if the party or amicus is a corporation:

a.    identify all of its parent corporations, if any; and

  Hytera Communications Corporation Ltd.

b.    list any publicly held company that owns 10% or more of the party's or amicus' stock:

Hytera Communications Corporation Ltd.

Attorney's Signature:  /s/ Leah M. Quadrino        Date:  June 3, 2026

Attorney's Printed Name:  Leah M. Quadrino

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes _____ No __X__

Address:  Steptoe LLP

        1330 Connecticut Avenue, NW, Washington, DC 20036

Phone Number: (202) 429-3900        Fax Number:  (202) 429-3902

E-mail Address:  lquadrino@steptoe.com

## TABLE OF CONTENTS

Introduction ........................................................................... 1

Jurisdictional Statement ...................................................... 4

Issues Presented for Review................................................ 4

Statement of the Case .......................................................... 4

    G.S. Kok's 2008 Theft of Motorola Information ..................... 5

    Motorola's 2017 Civil Trade Secret and Copyright Case ......... 6

    Hytera's Payments on the Civil Judgment ............................ 9

    2021 Criminal Indictment and 2025 Plea Agreement........... 10

    Sentencing Hearing ..................................................... 11

        Findings as to Motorola's Losses ................................ 12

        Findings as to Hytera's Payments to Motorola .............. 13

        Findings That Hytera's Pre-Sentencing Payments Offset Motorola Losses ....................................................... 13

        Hytera's Sentence .................................................... 15

Summary of Argument ............................................... 17

Standard of Review..................................................... 19

Argument ................................................................... 20

I.    Because Motorola Has Been Made Whole, Judge Tharp Correctly Determined that It Was Not Owed Restitution. ....... 20

    A.    In Property Offenses, the MVRA Treats a Defendant's Presentencing Payments to a Victim as "Returned" Property That Offsets Restitution. ............................ 20

    B.    Judge Tharp's Factual Findings under §3663A Were Not Clear Error................................................................ 23

    C.    Judge Tharp's Findings Were Consistent with *Malone* .. 26

II.    Motorola and the Government Incorrectly Rely on §3664, Which Applies Only *After* Sentencing Has Occurred. ....................... 28

    A.    Even if §3664(j)(2) Applied, Hytera's Presentencing Payments Still Fully Offset Restitution. ....................... 29

        1.    Section 3664(j)(2)'s "Compensatory Damages"

Language is Applied Liberally and Codifies Common Law Principles Precluding Duplicative Recovery. ................. 30

2.  Section 3664(j)(2) Cases Cited by Motorola Are Inapposite. ................................................................ 32

B.  Judge Tharp Did Not Clearly Err in Determining that Hytera Directed Its Presentencing Payments Toward Prejudgment Interest and Compensatory Damages. ..... 34

III.  Judge Tharp Did Not Clearly Err When Deducting $70 Million in Incremental Costs from Motorola's Lost Profits................. 37

Conclusion ........................................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crothersville Lighthouse Tabernacle Church v. Church Mut. Ins.*,
168 F.4th 483 (7th Cir. 2026)..................................................22

*e360 Insight, Inc. v. Spamhaus Project*,
658 F.3d 637 (7th Cir. 2011)..................................................38

*First Wis. Fin. Corp. v. Yamaguchi*,
812 F.2d 370 (7th Cir. 1987)..................................................36

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988) .............................................................19

*Hallmark Ins. Adm'rs, Inc. v. Colonial Penn Life Ins. Co.*,
990 F.2d 984 (7th Cir. 1993)..................................................38

*In re Hufman*,
No. 20-3547 (7th Cir. Jan.8, 2021), Order, ECF No. 9 .............19

*In re Matheson Flight Extenders, Inc.*,
673 B.R. 436 (Bankr. E.D. Cal. 2025), *rev'd on other
grounds*..............................................................................37

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
2018 WL 1804350 (N.D. Ill. Apr. 17, 2018).............................23

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
2021 WL 12285863 (N.D. Ill. Jan. 8, 2021) ....................7, 8, 25

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
108 F.4th 458 (7th Cir. 2024)
.......................................................5, 6, 7, 8, 9, 10, 23, 24

*Nat'l Bank of Commonwealth v. Mechanics' Nat'l Bank*,
94 U.S. 437 (1876) ..............................................................36

*Robers v. United States,*
572 U.S. 639 (2014) ...................................................... 21

*Stevens v. United States,*
49 F.3d 331 (7th Cir. 1995).................................................. 36

*United Cent. Bank v. KMWC 845, LLC,*
800 F.3d 307 (7th Cir. 2015).................................................. 39

*United States v. Addison,*
803 F.3d 916 (7th Cir. 2015).................................................. 35

*United States v. Allen,*
529 F.3d 390 (7th Cir. 2008).................................................. 21

*United States v. Alverez,*
21 F.4th 499 (7th Cir. 2021).................................................. 19

*United States v. Betts,*
99 F.4th 1048 (7th Cir. 2024).................................................. 19

*United States v. Bright,*
353 F.3d 1114 (9th Cir. 2004).................................................. 29

*United States v. Bryson,*
2015 WL 4619637 (D. Conn. July 31, 2015)............................ 33

*United States v. Calbat,*
266 F.3d 358 (5th Cir. 2001).................................................. 33

*United States v. Chalupnik,*
514 F.3d 748 (8th Cir. 2008)............................................ 25, 32

*United States v. Crawford,*
169 F.3d 590 (9th Cir. 1999).................................................. 33

*United States v. Cross,*
No. 25-5276, 2025 WL 3643284 (6th Cir. Dec. 16,
2025) ................................................................. 32

*United States v. Dawson,*
250 F.3d 1048 (7th Cir. 2001).................................................. 20

*United States v. Ghuman,*
  966 F.3d 567 (7th Cir. 2020) ................................................. 21

*United States v. Hernandez,*
  44 F.4th 1053 (7th Cir. 2022) ........................................... 35, 38

*United States v. Johnson,*
  911 F.3d 849 (7th Cir. 2018) ............................................ 30, 31

*United States v. Malone,*
  747 F.3d 481 (7th Cir. 2014)
    ........................................................2, 13, 14, 17, 21, 26, 27, 28

*United States v. Newman,*
  144 F.3d 531 (7th Cir. 1998) ............................................ 20, 37

*United States v. Robers,*
  698 F.3d 937 (7th Cir. 2012) ................................................. 36

*United States v. Ruff,*
  420 F.3d 772 (8th Cir. 2005) ............................................ 29, 31

*United States v. Shepard,*
  269 F.3d 884 (7th Cir. 2001) ............................................ 21, 37

*United States v. Sizemore,*
  850 F.3d 821 (6th Cir. 2017) ............................................ 33, 34

*United States v. Smathers,*
  879 F.3d 453 (2d Cir. 2018) ................................................. 32

*United States v. Yalincak,*
  853 F.3d 629 (2d Cir. 2017) ................................................. 29

*Wipf v. Kowalski,*
  519 F.3d 380 (7th Cir. 2008) ................................................. 41

## Statutes

18 U.S.C. §1832(a)(5) ............................................................ 10

18 U.S.C. §2323(c) ............................................................... 20

18 U.S.C. §3231 ............................................................................... 4

18 U.S.C. §3663(a)(1)(B)(i) ........................................................... 26

18 U.S.C. §3663(b)(2) ................................................................... 34

18 U.S.C. §3663(b)(3) ................................................................... 34

18 U.S.C. §3663A.............................................11, 13, 23, 28, 29

18 U.S.C. §3663A(b)(1) ..............................1, 17, 20, 21, 22, 27, 33

18 U.S.C. §3663A(b)(2) ........................................................ 27, 33

18 U.S.C. §3663A(b)(3) ................................................................ 33

18 U.S.C. §3663A(b)(4) ................................................................ 26

18 U.S.C. §3664(j)(1) .................................................................... 34

18 U.S.C. §3664(j)(2) .........................11, 18, 28, 29, 30, 31, 32, 34

18 U.S.C. §3771(d)(3) ....................................... 4, 5, 19, 22, 35, 38

**Other Authorities**

Restatement (Second) of Torts §920A(2)........................................ 31

S. Rep. No. 104-179, 1995 WL 731704 (1995) ............................. 26

## **<u>INTRODUCTION</u>**

The Honorable John J. Tharp, Jr. was not "badly confused" when he declined to order Hytera to pay more restitution to Motorola than it was owed. Pet.21. After conducting multiple hearings and painstaking reviews of hundreds of pages of restitution-related briefing, Judge Tharp made a series of carefully crafted factual findings, none of which is clearly erroneous:

1) Motorola's 2010-2019 lost profits, interest, and criminal-case attorneys' fees from Hytera's property offense totaled $214.5 million; A428:19–A429:6; A445:5–22;

2) Hytera had returned to Motorola $214.8 million in the related civil case prior to sentencing; A425:22–24; A445:5-22; and

3) The civil and criminal cases involved identical sales, products, individuals, conduct, and harms. A346:8–14; A352:1–17; A352:24–A353:16; A355:14–19; A421:9–423:13; A430:12–431:24.

Judge Tharp therefore concluded—correctly—that Hytera had returned to Motorola before sentencing more than the value of its stolen property, i.e., the amount of its lost profits. A445:5–22. Accordingly, following 18 U.S.C. §3663A(b)(1) and this Court's command that "[a]ny amount the victim has received from the defendant in a civil suit as of the time of sentencing…must be used to reduce the restitution amount to prevent double recovery by the

victim," Judge Tharp ruled that no further restitution was owed. *United States v. Malone,* 747 F.3d 481, 485 (7th Cir. 2014); A420:19–421:1; A445:5–22.

Notwithstanding that Motorola sought the identical amount of lost profits in both the civil and criminal cases—$174.4 million, A687-90—Motorola now argues that Hytera's payments towards the civil judgment cannot offset criminal restitution because the time-period covered by Motorola's civil DTSA claim (2016-2019) was only a subset of the time-period covered by criminal restitution (2010–2019). Pet.16–22. But as Judge Tharp explained, what mattered was the total amount of profits Motorola lost between 2010-2019 and the total amount of money Hytera subsequently repaid Motorola, not the different labels applied to the awards. A346:3–14; A422:12–423:8; A430:12–A431:24. In other words, Motorola is confusing the *remedies* it sought in the civil case with its actual *loss* in the criminal case. That Motorola successfully pursued a variety of civil remedies does not change the dollar amount of the harm it suffered from the theft of its trade secrets, as Judge Tharp found. A346:3–14.

Judge Tharp's ruling was both legally proper and equitable. He understood that Motorola will be made much more than whole,

ultimately receiving over $491 million from Hytera on the civil judgment—$275 million more than it ever lost in diverted sales. A750; A268:4–269:6. Restitution is not designed to provide Motorola the windfall it seeks, and Judge Tharp did not abuse his discretion in refusing that request.

Judge Tharp also considered all the attacks Motorola and the government now levy against Hytera on matters irrelevant to restitution. A331:16–A336:7; A415:25–419:15. And he further found that by virtue of the punitive damages award, Hytera had been punished financially more than all other corporations convicted of trade secret theft **combined**. A332:14–24; A336:1–7; A417:12–19. Judge Tharp also considered that Hytera had changed its ways, including by significantly paying down its debt to Motorola, A265:11–22; A334:7–10, and improving its compliance program, A275:7–19; A672–73; SA43-44; PSR ¶¶86-88.

Unable to demonstrate error, Motorola resorts to referring to Judge Tharp as "confused" nearly half-a-dozen times. Pet.2–3, 21–22. But Judge Tharp's factual findings and legal rulings on restitution are far from clear error or an abuse of discretion, and Motorola's petition should be denied.

3

## JURISDICTIONAL STATEMENT

Motorola's jurisdictional statement is not complete and correct. The district court had subject-matter jurisdiction pursuant to 18 U.S.C. §3231 and entered judgment on March 9, 2026. Motorola filed its petition on March 19, 2026, R.438, and this Court has jurisdiction under 18 U.S.C. §3771(d)(3).

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court abused its discretion in determining that Hytera owed no additional restitution after finding that (1) Motorola's loss in the criminal case totaled $214.5 million; (2) Hytera had paid Motorola $214.8 million prior to sentencing; and (3) the civil and criminal cases involved the same harms.

2. Whether the district court abused its discretion by reducing Motorola's lost profits by $70 million based on its factual determination that the government's lost profits calculation failed to account for avoided management fees, research and development costs, and corresponding interest.

## STATEMENT OF THE CASE

Hytera today is a publicly traded telecommunications company that develops products used by first responders, school systems, and

4

airports in over 120 countries. SA48. It has built public-safety communications networks in over twenty countries. *Id.* It makes hundreds of products, most of which are not at issue here. SA48-49; A120:25-A121:7; R.405-1 at 3-6. Pursuant to a royalty, Hytera pays Motorola 100% of its profits on the sales of any products Motorola accused in the civil trial. *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.,* 108 F.4th 458, 471 (7th Cir. 2024). Hytera therefore has not profited, and *never will profit,* from any use of Motorola's trade secrets. A332:25–A333:17; A624-25.

### G.S. Kok's 2008 Theft of Motorola Information

The civil and criminal trade secret cases arise out of the same conspiracy perpetrated in 2008 by a disgruntled Motorola engineer, G.S. Kok. A448-75; *Motorola,* 108 F.4th at 469. Criminal search warrants uncovered new evidence about that conspiracy that was not part of the civil record, including personal emails from the former Motorola engineers involved in the theft. R.41 at 24-57, 104-05. Those emails detailed rampant communications between the former Motorolans which confirmed that the charged individuals, not Hytera, were the drivers of the conspiracy. *Id.*; *see also* A149:14–23; A618–19; SA22.

**Motorola's 2017 Civil Trade Secret and Copyright Case**

Nearly ten years after Kok's theft, Motorola sued Hytera in numerous cases around the world, including the 2017 civil case in this district (the "civil case"). Motorola brought claims under the Defend Trade Secrets Act and the Copyright Act to recover damages for the 2010-2019 period. *Motorola*, 108 F.4th at 468, 471. Motorola used both statutes to recover damages for the same conduct and the same sales of accused products as were at issue in the criminal case. A346:11–14. Because Motorola was precluded from seeking damages under DTSA prior to its 2016 enactment, Motorola sought damages under the Copyright Act for the pre-DTSA period, 2010-2016. *Motorola*, 108 F.4th at 470-71.

At trial, Motorola pursued alternative recovery theories, asking the jury to award either (1) its lost profits, or (2) Hytera's unjust enrichment. A739, 743-44(Motorola closing demonstrative from civil trial); SA27-28. Motorola claimed its lost profits from 2010-2019 totaled $174.4 million—the exact amount the government sought for Motorola as lost profits in the criminal case—based on Hytera's sales that Motorola's expert claimed would have gone to Motorola had Hytera not used the trade secrets. A687-90; SA26-29.

6

Alternatively, Motorola claimed $345.8 million in unjust enrichment damages from 2010-2019. A739, 743-44; *Motorola,* 108 F.4th at 470; A133:21–134:6. Motorola sought to disgorge $272.1 million of Hytera's profits on accused product sales, as well as $73.6 million of Hytera's "avoided R&D expenses" (i.e., expenses that Hytera had avoided paying by its use of the trade secrets). *Motorola,* 108 F.4th at 470-71, 491-92; A739; A743; A133:21–134:13. Because Motorola's claimed damages for unjust enrichment far exceeded its lost profits, Motorola urged the jury to award $764.6 million in unjust enrichment and punitive damages, which the jury did. *Motorola,* 108 F.4th at 468; *see also* A622; R382 at 20–21.

Post trial, the district court corrected several errors related to the verdict. First, Judge Norgle treated the jury's award as advisory because unjust enrichment is an equitable remedy that only a court may award. *Motorola,* 108 F.4th at 471; *Motorola Sols., Inc. v. Hytera Commc'ns Corp.,* 2021 WL 12285863, at *2, *12 (N.D. Ill. Jan. 8, 2021). Next, Judge Norgle found that the jury's award of unjust enrichment in the form of Hytera's profits *and* its avoided R&D costs erroneously double-counted the benefit to Hytera. *Motorola,* 108 F.4th at 471; *Motorola,* 2021 WL 12285863, at *12; *see also* A622–

7

23. Judge Norgle therefore awarded unjust enrichment damages based on Hytera's profits on accused product sales ($135.8 million under DTSA and $136.3 million under the Copyright Act) and not any of the avoided R&D, which resulted in a reduced punitive damages figure under DTSA of $271.6 million (i.e., two times the $135.8 million DTSA unjust enrichment damages). *Motorola*, 2021 WL 12285863, at *20-21. The lowered damages award totaled $543.7 million. *Motorola*, 108 F.4th at 471; *Motorola*, 2021 WL 12285863, at *20-21.

On appeal, this Court found additional errors. The Court reduced the copyright award to exclude damages based on foreign sales, and remanded to the district court to consider whether profits attributable to U.S. sales needed to be apportioned to reflect Hytera's contributions to the products. *Motorola*, 108 F.4th at 478. While acknowledging that the district court also failed to apportion the DTSA judgment, the Court found that error harmless. *Id.* at 488–89. The Court determined that Judge Norgle's prior references to $73 million in avoided R&D (2010-2019) and $86 million in lost profits for the DTSA period (2016-2019) collectively totaled $159 million—an amount greater than the un-apportioned unjust enrichment

8

award. *Id.* at 489, 492.

The final DTSA judgment affirmed on appeal consisted of $135.8 million in Hytera profit disgorgement, $272 million in punitive damages, and attorneys' fees, costs, and pre- and post-judgment interest, totaling in excess of $475 million. *Id.* at 468–69.

### Hytera's Payments on the Civil Judgment

Once this Court's mandate issued in October 2024, Hytera began paying down the civil judgment. A625–26. Hytera committed to paying, on a quarterly basis, its net positive cashflow from operations, and estimated that it would pay at least $80 million per year. A165:19–A166:2; A625–26; A661. Hytera ultimately achieved more, paying Motorola $214.8 million as of March 2026, A425:22:–24. A balance of approximately $274 million of the $491 million judgment remains, which Hytera must and will pay down by $100 million annually under its probation terms. A432:14–18; A433:17–22.

The sums that Motorola will receive from the civil judgment dwarf both Motorola's loss and Hytera's gain from the theft. Judge Tharp concluded that Motorola lost $132.3 million in profits for the entire 2010–2019 period, with an additional $79.5 million in accrued

9

prejudgment interest. A414:3–5; A427:1-A428:3. The DTSA unjust enrichment and punitive remedies *alone* (i.e., without interest) exceed that figure by more than $100 million. *Motorola*, 108 F.4th at 468–69.

Similarly, the total that Hytera will pay Motorola in the civil case ($491 million, plus potential copyright damages and ongoing interest) is at least $219 million *more* than the $272 million in profits Hytera made on its sales on the accused products. A750; *see also* A133:21–A134:4. In fact, the $491 million judgment exceeds the combined total of Motorola's actual loss in the criminal case ($214.5 million) *and* all of Hytera's profits on those same sales.

By any measure, Motorola's cup is overflowing.

### 2021 Criminal Indictment and 2025 Plea Agreement

The same 2008 theft that formed the basis of Motorola's civil trade-secret suit spawned a criminal trade-secret-theft indictment. A346:11–14; A448–75. On January 13, 2025, Hytera pled guilty to one count of conspiracy to steal trade secrets pursuant to 18 U.S.C. §1832(a)(5). A542–60.

Hytera's plea agreement included two provisions governing how Hytera's payments to Motorola would be treated for restitution

purposes. First, the parties agreed that payments made *before* sentencing would be governed by 18 U.S.C. §3663A:

> [P]ursuant to **Title 18, United States Code, Section 3663A**, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to Motorola in an amount to be determined by the Court at sentencing **and shall reflect credit for any funds repaid prior to sentencing**.

A549(emphasis added).

Motorola's Petition and the government's response omit this provision. Pet.8; Gov.6-7. Instead, they cite only the second provision, where the parties agreed that payments made *after* restitution was ordered would be controlled by 18 U.S.C. §3664(j)(2). A550("[P]ayments made by defendant to the victim, Motorola, will be credited toward restitution owed by defendant in this case to the extent permitted by 18 U.S.C. §3664(j)(2).").

### Sentencing Hearing

Judge Tharp received eight submissions on restitution and related sentencing issues from the parties, as well as two additional submissions from Motorola (R.393, VIS),[1] all totaling over 20,000

---

[1] "VIS" refers to the Motorola victim-impact-statement attached to

pages of briefing and exhibits. He devoted five hearing days over several months to considering evidentiary presentations and arguments from Motorola and the parties. On March 5, 2026, Judge Tharp made the following factual findings and legal rulings.

**Findings as to Motorola's Losses**

Relying on Motorola's expert analysis from the civil case, which the government adopted, Judge Tharp determined that Motorola's lost profits from sales of the accused products between 2010-2019 totaled $174.4 million. A412:4–8. This was the exact amount of lost profits Motorola had told the civil jury they could award for the 2010-2019 period. A743.

Judge Tharp then found that Motorola's lost profits calculation was overstated by $42 million because it did not account for the increase in management fees and R&D costs that Motorola would have incurred had it made the additional sales in the but-for world where Hytera was not competing. A412:9–414:5. The district court therefore reduced Motorola's lost profits from $174.4 million to $132.3 million, resulting in a corresponding $28 million reduction in

the PSR.

12

prejudgment interest, for a total reduction of $70 million. *Id.*

After calculating the prejudgment interest that accrued on the $132.3 million baseline, and adding $2.2 million for Motorola's attorneys' fees in the criminal case, A425:17–19, the district court concluded that Motorola sustained a loss of $214.5 million. A426:18–428:3; A428:19–A429:6; A445:5–22.

**Findings as to Hytera's Payments to Motorola**

It was undisputed, and Judge Tharp found, that Hytera had paid Motorola $214.8 million towards the civil judgment as of the March 5, 2026 sentencing date. A425:22–24.

**Findings That Hytera's Pre-Sentencing Payments Offset Motorola Losses**

Judge Tharp found it appropriate to offset Motorola's losses from the criminal case with the amounts that Hytera had paid towards the civil judgment because the offset was consistent with the provisions of Hytera's plea agreement, reflecting that pre-sentencing payments would be credited under 18 U.S.C. §3663A, and *Malone*, this Court's seminal precedent interpreting §3663A and requiring that pre-sentencing payments be credited towards restitution to avoid double recoveries in property offenses. 747 F.3d at 485;

13

A420:17–421:9. Judge Tharp also found that the identical sales, products, individuals, conduct, and harms were at the root of both the civil damages award and the government's criminal lost-profits calculation. A346:8–14; A352:1–17; A352:24–A353:16; A355:14–19; A421:9–423:13; A430:12–431:24.

Judge Tharp rejected the arguments advanced by Motorola and the government now. While the government had argued that the amounts Hytera had paid in the civil case could not include lost profits from the pre-DTSA period (2010–2016) because the civil DTSA judgment did not include pre-DTSA sales, the district court disagreed:

> [Even] if the compensatory damage award in the civil case is based on a different metric …. Whatever is paid in the civil case before judgment is entered in the criminal case reduces the restitution owed. That's consistent with *Malone*. That's consistent with the parties' plea agreement. The issue isn't whether the legal theories match up. It's whether and to what degree the payments Hytera has made compensate Motorola for Hytera's theft of Motorola's property.

A422:22–423:8.

Further, Judge Tharp recognized that "we've got a civil judgment that includes compensatory damages that are the product of different legal theories being applied than the legal theory on which

14

[the] restitution calculation is based...the legal theories don't necessarily match up." A430:14–19. The court acknowledged "[t]hat creates a situation where there...may be some mismatch in terms of offsetting restitution and...whether that addresses fully the...compensatory damages in the civil judgment." A430:24–431:3. But Judge Tharp concluded:

> [U]ltimately we've got to do...the calculation...for restitution based on what applies here, the MVRA, and the fact that...using that as the basis for the calculation of the restitution amount in the criminal case may or may not conceptually exhaust or satisfy the compensatory damage elements that are to be paid as a result of the civil judgment[.]

A431:4–10.

After finding that Hytera had paid Motorola more than Hytera owed in restitution by returning property (money from lost sales) as a remedy for the theft of Motorola's trade secrets, Judge Tharp correctly concluded that Motorola had been fully compensated for its losses and was not entitled to further restitution under the MVRA. A445:14–22.

### Hytera's Sentence

Motorola and the government devoted most of their energy at sentencing to attacking Hytera for the former Motorolans' theft and

15

the company's legal positions in the various civil proceedings. *See, e.g.,* R.393 at 1–10, 19–20; R.363 at 33–35, 40–44. Judge Tharp was not persuaded by that invective. While condemning Hytera's crime, he also recognized that (1) some accusations against Hytera were overstated;[2] (2) by virtue of the civil punitive damages award, Hytera was going to be punished more than any other corporate trade-secret defendant in history *combined,* indeed, *$50 million more than every other corporate criminal defendant combined when including Hytera's fine,* A332:14–24; A336:1–7; A417:12–19; *see also* A88:9–15; A419:22–25; and (3) Hytera had made significant strides towards remediation, both in terms of payments to Motorola, A265:11-22; A334:7–10, and its dramatically improved compliance program, which the government also credited. *See* A93:15–17; A257:5–19; A435:17–18; R.378 at 30–31; A275:7–19; A672–73; PSR ¶¶86-88.

---

[2] *E.g.,* Motorola and the government attacked Hytera's former CEO as the supposed ringleader of the crime, but the district court disagreed. *Compare* A61:11–15(government's position that both defendant G.S. Kok and Hytera's former CEO, Mr. Chen, were involved) *with* A328:23–25(district court finding only that "there was the involvement of a high-level individual, specifically Mr. Kok…in the offense of conviction"). Similarly, the district court rejected the government's contention that Hytera had engaged in "obstructive conduct." A330:11–14.

Judge Tharp concluded the facts were ultimately "a mixed bag" warranting imposition of a fine $10 million less than what the government sought. A418:20–A419:25.

## SUMMARY OF ARGUMENT

Judge Tharp did not abuse his discretion in declining to order Hytera to pay more restitution to Motorola than Motorola was owed. The MVRA requires a defendant to return stolen property to the victim or pay an amount equal to the value of the property "less…the value...of any part of the property that is returned." 18 U.S.C. §3663A(b)(1)(B)(ii).

Judge Tharp determined that the property Motorola "lost" from 2010-2019 was the profit from radio sales that were diverted to Hytera because of the theft of Motorola's information, and found that Motorola's lost profits, plus interest and criminal attorney's fees, totaled $214.5 million. Judge Tharp further found that the property "returned" to Motorola, i.e., the money Hytera paid to Motorola prior to sentencing, totaled $214.8 million. Based on these findings, the plea agreement's restitution terms, and *Malone*, Judge Tharp properly concluded that Motorola had already been fully compensated for its actual loss and was not owed further restitution.

17

Motorola and the government focus on an inapplicable provision of the MVRA, 18 U.S.C. §3664(j)(2), which deals with *post-sentencing* restitution credits: "Any amount paid to a victim under an order of restitution shall be reduced by any amount *later* recovered as compensatory damages for the same loss by the victim." *Id.* (emphasis added). Even if that portion of the MVRA applied—and it does not—Judge Tharp did not commit clear error in concluding that the losses in the civil and criminal cases were the same. Motorola sought the identical amount of lost profits—$174.4 million—in both cases, and both involved identical sales, products, individuals, conduct, and harm.

Judge Tharp also correctly concluded that Motorola's lost profits should be reduced by $70 million because Motorola would have incurred additional management and R&D costs in making additional sales in the but-for world where Hytera had not misappropriated Motorola's information. Motorola and the government waived any challenge to Hytera's (1) initial request for the reduction and (2) subsequent motion to reconsider because both litigants failed to object or ask to file a response. Moreover, Judge Tharp credited the quantitative econometric analysis of Hytera's

18

expert in the criminal case over the conclusory opinion of Motorola's expert from the civil case and made corresponding factual findings. Judge Tharp's resolution of this garden-variety evidentiary dispute was not clearly erroneous.

## STANDARD OF REVIEW

If a crime victim seeks relief under the Crime Victim's Rights Act and that relief is denied, "the movant may petition the court of appeals for a writ of mandamus." 18 U.S.C. §3771(d)(3). While the CVRA provides that "the court of appeals shall apply ordinary standards of appellate review," *id.*, a petitioner nevertheless has the burden of proving "a violation of clearly established rights." Order, *In re Hufman*, No. 20-3547 (7th Cir. Jan.8, 2021), ECF No. 9 (denying CVRA mandamus petition and citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988)).

A district court's restitution-related factual findings are reviewed for clear error, and its ultimate "calculation of restitution" is reviewed for abuse of discretion. *United States v. Alverez*, 21 F.4th 499, 502–03 (7th Cir. 2021); *accord United States v. Betts*, 99 F.4th 1048, 1065 (7th Cir. 2024).

19

## ARGUMENT

I. **BECAUSE MOTOROLA HAS BEEN MADE WHOLE, JUDGE THARP CORRECTLY DETERMINED THAT IT WAS NOT OWED RESTITUTION.**

    A. **In Property Offenses, the MVRA Treats a Defendant's Presentencing Payments to a Victim as "Returned" Property That Offsets Restitution.**

The MVRA is designed to "ensure that victims recover the full amount of their losses, but nothing more." *United States v. Newman,* 144 F.3d 531, 542 (7th Cir. 1998); *see also United States v. Dawson,* 250 F.3d 1048, 1050 (7th Cir. 2001)(victim "should not receive anything more in restitution than is required to make [it] whole").

The MVRA commands that "in the case of an offense resulting in damage to or loss or destruction of property"—like this one—a district court must order the defendant to return the property to its owner. 18 U.S.C. §3663A(b)(1)(A); *see also* 18 U.S.C. §2323(c) (intellectual-property crime treated "as an offense against property" for restitution purposes). If returning the property is "impossible, impracticable, or inadequate," as was the case here with Motorola's lost profits, the defendant must "pay an amount equal" to the value of the property "less...the value...of any part of the property that is returned...." 18 U.S.C. §3663A(b)(1)(B)(ii).

20

"The property…returned" need not be the identical property stolen. *Robers v. United States*, 572 U.S. 639, 643 (2014)(quoting 18 U.S.C. §3663A(b)(1)). Instead, property is "returned" for statutory purposes if it is "of the same type as the property lost by the victim." *Malone*, 747 F.3d at 488; *see also United States v. Shepard*, 269 F.3d 884, 887 (7th Cir. 2001)("to the extent improvements" to victim's home were "realized by [her] estate in selling the property, the funds were 'returned' for statutory purposes"); *United States v. Ghuman*, 966 F.3d 567, 579 (7th Cir. 2020)(restitution properly offset by collateral securing fraudulently-obtained loans if collateral was liquidated by victim before sentencing); *United States v. Allen*, 529 F.3d 390, 397 (7th Cir. 2008)(plain error not to credit value of mold-remediation services defendant provided victim).

Importantly, for property offenses, "[a]ny amount the victim has received from the defendant in a civil suit as of the time of sentencing qualifies as 'property that is returned' and must be used to reduce the restitution amount to prevent double recovery by the victim." *Malone*, 747 F.3d at 485. Put simply, any "sums received from the defendant before sentencing are fair game." *Id.* at 485.

Here, Judge Tharp determined that the property Motorola "lost"

21

was the profit from radio sales that were diverted to Hytera because of the theft of Motorola's information. A309:11–310:11. At sentencing, Motorola and the government agreed that this was the property Motorola had lost. R.393 at 16; R.363 at 36-38. In an effort to sidestep §3663A(b)(1), Motorola now claims that Hytera cannot receive credit for property returned under §3663A(b)(1) because "returning money is not return of 'the specific property' of trade secrets." Pet.27. But Motorola has waived this argument by taking a different position in the district court. *Cf.* VIS at 28(arguing that Hytera must return lost profits to Motorola "in lieu of the misappropriated property"); *Crothersville Lighthouse Tabernacle Church v. Church Mut. Ins.*, 168 F.4th 483, 491 (7th Cir. 2026)("When a litigant selects among possible arguments…the normal consequence is that he waives those not advanced."); 18 U.S.C. §3771(d)(3) (rights of crime victims must "be asserted in the district court" as precondition for "petition[ing] the court of appeals for a writ of mandamus").

Moreover, Hytera does not need to return any "trade secrets" to Motorola. First, Judge Tharp concluded that, because Hytera was convicted of *conspiring* to steal trade secrets,

22

> [t]hat charge does not require proof that any trade secret was actually stolen or any information stolen was actually a trade secret. The relevant question for liability and sentencing for a conviction of 1832(a)(5) is what was the loss that was at issue that was caused by the conduct that was in furtherance of the conspiracy...whether or not that conduct actually resulted in the theft of any one or more stolen trade secrets[.]

A305:4-12.

Second, Motorola never lost possession of any of its purported trade secrets following the theft because the ex-Motorolans downloaded electronic copies of Motorola's information. *Motorola*, 108 F.4th at 469, 473. Indeed, Motorola claimed in the civil suit it did not even realize the information had been taken until 2017, nine years after the theft. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350, at *1 (N.D. Ill. Apr. 17, 2018).

Judge Tharp then found that Hytera had returned to Motorola more than the amount of Motorola's loss, and properly concluded that Motorola had been fully compensated.

## B.   Judge Tharp's Factual Findings under §3663A Were Not Clear Error

Motorola and the government contend that Judge Tharp erroneously concluded Motorola's loss in the criminal and civil cases

23

were the same. Pet.16; Gov.19-20. Notwithstanding that Motorola sought the identical lost profits amount in both the civil and criminal cases for the 2010-2019 period—$174.4 million—Motorola and the government now argue the losses were not the same because the time-period covered by Motorola's DTSA claim (2016-2019) was only a subset of the time-period covered by criminal restitution (2010–2019). Pet.16-22. But as Judge Tharp explained, what mattered was the total amount of profits Motorola lost between 2010-2019, and the total amount of money Hytera subsequently repaid Motorola, not the different labels that were applied to the awards. A346:3–14; A422:12–423:8; A430:12–A431:24.

In addition, this Court has already recognized that the civil DTSA judgment compensated Motorola for damages for the 2010-2016 period. This Court found Judge Norgle's failure to apportion the DTSA judgment (to credit Hytera's contributions to its products) to be harmless error because Hytera's avoided R&D expenses (covering the entire 2010-2019 period) plus Motorola's lost profits (covering 2016-2019) were greater than the unapportioned DTSA judgment covering profit disgorgement. 108 F.4th at 502 ("[t]he avoided R&D costs (and Hytera's reduced time to bring its products to market) in

this case had a direct competitive effect on Motorola" and upholding DTSA award based on combination of "Motorola's lost profits of $86.2 million and Hytera's avoided R&D costs of $73.6 million"). As Judge Norgle explained in the civil case, Hytera was unjustly enriched via avoided R&D expenses with regard to "each and every product ***at the time that product [wa]s introduced***," which includes all products launched from 2010–2019. *Motorola,* 2021 WL 12285863, at *7(emphasis added).

Motorola similarly argues that restitution for the 2010-2016 period can only be offset by money paid towards the copyright award (which covered sales from 2010-2016), and because the copyright award has been vacated, no award is available to offset restitution for that time-period. Pet.20. But, again, Judge Tharp correctly determined that Hytera has already repaid Motorola for the entire amount of profits Motorola lost from 2010-2019, so any future copyright award will be pure windfall. *See United States v. Chalupnik,* 514 F.3d 748, 754 (8th Cir. 2008)("[T]he amount of restitution that may be awarded is limited to the victim's provable actual loss, even if more punitive remedies would be available in a civil action.").

Fundamentally, Motorola and the government confuse the

25

*remedies* Motorola sought in the civil case with the sum total of its actual *loss* in the criminal case. That Motorola has successfully pursued a variety of civil remedies does not change the dollar amount of the harm it suffered from the theft of its trade secrets. *See* S. Rep. No. 104-179, 1995 WL 731704, at *18 (1995)("It is the committee's intent that courts order full restitution...while guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings.").

This is also why Hytera's payments to Motorola appropriately offset the amount of restitution owed for Motorola's attorneys' fees in the criminal case—because Judge Tharp properly included those fees in the amount of "loss" Motorola suffered in the criminal case, and then correctly determined that Hytera had paid Motorola in excess of that that loss. *Cf.* Pet.21–22; 18 U.S.C. §§3663(a)(1)(B)(i), 3663A(b)(4).

## C.   Judge Tharp's Findings Were Consistent with *Malone*

*Malone* is unequivocal: in property cases, "[a]ny amount the victim has received from the defendant in a civil suit as of the time of sentencing qualifies as 'property that is returned' and must be used to reduce the restitution amount to prevent double recovery by the

26

victim." 747 F.3d at 485. Motorola and the government try to escape this controlling precedent by arguing that *Malone* does not permit offsets for pre-sentencing payments made for "a different loss." Pet.18–19. But that argument runs afoul of Judge Tharp's finding that the civil judgment *was* for the same harm that Motorola suffered in the criminal case, just with different labels.

More importantly, however, *Malone precludes any evaluation of the relatedness of particular losses.* Instead, *Malone* reinforces 3663A's requirement that, in property offenses, courts must credit a defendant for any property returned to a victim before sentencing. As the *Malone* Court explained:

> **Under 18 U.S.C. § 3663A(b)(1), the calculation involve[s] consideration of two, and only two, things**: (1) the property [the victim] lost or its value (which are essentially the same thing when, as here, the property is cash), *see* 18 U.S.C. § 3663A(b)(1)(A) and (B)(i), and (2) the value (as of the date the property is returned) of any part of the property that is returned, 18 U.S.C. § 3663A(b)(1)(A)(ii).

747 F.3d at 487–88 (internal quotations omitted)(emphasis added).

Like in *Malone*, the property lost here was money—as Judge Tharp found, the amount of money Motorola lost in sales that were diverted to Hytera. And, as in *Malone*, the property Hytera returned

27

to Motorola was money, that is, "property of the same type as the property lost by the victim." *Id.* at 488. Judge Tharp's conclusion that Hytera had paid more money to Motorola than Hytera owed in lost profits, interest, and attorneys' fees from the criminal case, and Motorola's attempt to graft a "same loss" requirement onto *Malone* is simply wrong.

## II. MOTOROLA AND THE GOVERNMENT INCORRECTLY RELY ON §3664, WHICH APPLIES ONLY *AFTER* SENTENCING HAS OCCURRED.

Recognizing the impossibility of challenging Judge Tharp's conclusions under §3663A and *Malone*, Motorola and the government try to shoehorn their arguments into §3664(j)(2)—an inapplicable portion of the MVRA that deals with *post-sentencing* restitution credits. The government makes that very point:

> Section 3664(j)(2)…is phrased to specifically account for payments made *after* a restitution order is entered. 18 U.S.C. §3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount *later* recovered as compensatory damages for the same loss by the victim." (emphasis added)).

Gov.22–23. The government is correct: The text of §3664(j)(2) makes clear that §3664 does not apply when determining restitution in the first instance—that is §3663A's job. Courts agree as well. Section

28

3664(j)(2) "*only* comes into play *after* the district court has already ordered restitution." *United States v. Bright*, 353 F.3d 1114, 1122 (9th Cir. 2004)(emphasis added); *United States v. Ruff*, 420 F.3d 772, 775 (8th Cir. 2005)("By its plain language this section applies...after a court enters a restitution order."); *United States v. Yalincak*, 853 F.3d 629, 637 (2d Cir. 2017)("A district court's resolution of a motion for credit under §3664(j)(2) comes after an order of restitution has already been issued...."). Section 3664(j)(2) therefore is not relevant to whether Judge Tharp properly determined the amount of restitution to be ordered *before* pronouncing Hytera's sentence.

## A. Even if §3664(j)(2) Applied, Hytera's Presentencing Payments Still Fully Offset Restitution.

Motorola argues §3664(j)(2) "allows reduction in restitution for payments...only if they represent 'compensatory damages for the same loss,'" and again claims that the district court erred by "granting an offset for losses predating the DTSA's enactment based on compensation awarded solely for losses postdating the DTSA." Pet.16. But this argument fails for the same reasons Motorola's §3663A argument fails—the flawed focus on the mismatched remedies between the civil and criminal cases ignores that Hytera's

29

pre-sentencing payments exceeded Motorola's loss.

> ### 1. Section 3664(j)(2)'s "Compensatory Damages" Language is Applied Liberally and Codifies Common Law Principles Precluding Duplicative Recovery.

Motorola and the government also take an unduly cramped view of Section 3664(j)(2)'s definition of "compensatory damages." Section 3664(j)(2) states that the "amount paid to a victim…shall be reduced" in one specific circumstance—when the victim "later recover[s]…compensatory damages for the same loss" in a state or federal "civil proceeding." While the statute says nothing about whether reductions are appropriate in other contexts, numerous courts have held that payments to victims offset restitution in myriad circumstances that cannot plausibly be considered "compensatory damages" from a civil proceeding, making clear that the phrase "compensatory damages" is to be interpreted broadly.

For instance, this Court has held that an accountant ordered to pay restitution for preparing false tax returns was entitled to post-sentencing credit for back taxes eventually paid by her clients. *United States v. Johnson,* 911 F.3d 849, 852–53 (7th Cir. 2018). That was so even though "one could doubt that the collection of back taxes

counts as 'compensatory damages' under §3664(j)(2)." *Id.* at 852.

The Eighth Circuit reached a similar conclusion in *United States v. Ruff*, 420 F.3d 772 (8th Cir. 2005). There, a defendant argued he should receive restitution credit for the value of his car and personal money forfeited by law enforcement in a drug case. *Id.* at 774. The Eighth Circuit "doubt[ed]…that proceeds recovered from administrative forfeiture proceedings qualify as 'compensatory damages' under the restitution statutes," i.e., §3664(j)(2), but still offset those amounts from restitution since "the bar against double recovery should operate" to prevent state law enforcement "from recovering an amount greater than the agency expended." 420 F.3d at 775.

As these cases demonstrate, §3664(j)(2) codifies "the standard joint-and-several-liability approach of tort law" under which "[v]ictims get just a single recovery." *Johnson*, 911 F.3d at 852 (citing Restatement (Second) of Torts §920A(2)). Because courts applying §3664(j)(2) do so in a flexible way in accordance with common law principles, even if §3664(j)(2) applied, Judge Tharp's conclusion that the losses from the civil and criminal cases were the same was not clear error. The only necessary inquiry is the straightforward

31

question: Has the victim been made whole? Here, where Motorola will be paid more from the civil DTSA award than its actual lost profits plus interest from 2010-2019, A445:5-22, Judge Tharp did not commit clear error when answering that question in the affirmative. *See Chalupnik*, 514 F.3d at 754.

### 2.     Section 3664(j)(2) Cases Cited by Motorola Are Inapposite.

The cases cited by Motorola and the government denying requested offsets under §3664(j)(2) do not support the proposition that victims of property offenses who have been made whole *prior to sentencing* are nevertheless entitled to additional restitution. Pet.16-18. The cases are also distinguishable because they involve clearly unrelated criminal and civil matters, in contrast to the criminal and civil cases here, which Judge Tharp found to be functionally indistinguishable. *Cf. United States v. Smathers*, 879 F.3d 453, 455, 461–62 (2d Cir. 2018)(subsequent civil litigation bore no connection to defendant's criminal case as defendant could not even "point to anything in the complaint that mentions his name."); *United States v. Cross*, No. 25-5276, 2025 WL 3643284, at *1, *3 (6th Cir. Dec. 16, 2025)(denying restitution offset based on liquidation of defendant's

non-fraudulent loans and application of proceeds to the non-fraudulent loans); *United States v. Bryson*, 2015 WL 4619637, at *4 (D. Conn. July 31, 2015)(denying restitution offset for distributions made before conspiracy began, as "[t]he $200,000 distribution…includes return of the 88% of the investment not taken by the defendants' conspiracy to defraud[.]").

Motorola also relies on a trio of out-of-circuit drunk-driving cases governed by the MVRA provisions applicable to bodily injury crimes. Pet.16–17(citing *United States v. Sizemore*, 850 F.3d 821 (6th Cir. 2017); *United States v. Calbat*, 266 F.3d 358 (5th Cir. 2001); *United States v. Crawford*, 169 F.3d 590 (9th Cir. 1999)). Those cases are similarly inapposite.

First, the bodily injury portions of the MVRA do not permit restitution to be reduced by the value of property returned to the victim. *Compare* 18 U.S.C. §3663A(b)(1)(B) (permitting, in property offenses, reduction in restitution for value of property returned) *with* 18 U.S.C. §3663A(b)(2)-(3) (no comparable reduction for returned property in offenses involving bodily injury and death). Because Hytera was convicted of a property offense, Hytera's pre-sentencing payments to Motorola constituted a "return of property" pursuant to

§3663, not a post-sentencing amount "later recovered as compensatory damages" in a civil lawsuit. 18 U.S.C. §3664(j)(2).

Next, each of Motorola's drunk driving cases involved insurance payments. But under the MVRA, payments made by insurance do not reduce the *amount* of restitution a defendant owes—such payments simply redirect to whom a defendant owes restitution. *See* 18 U.S.C. §3664(j)(1) ("If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation[.]").

Finally, in all three cases the insurance payments were general settlements made pre-sentencing, and it was unclear whether they included payments for the limited types of losses the MVRA allows in bodily injury crimes, namely, certain medical and therapeutic expenses, lost wages, and funeral expenses. *See* 18 U.S.C. §3663(b)(2)-(3). *E.g., Sizemore*, 850 F.3d at 829.

### B.    Judge Tharp Did Not Clearly Err in Determining that Hytera Directed Its Presentencing Payments Toward Prejudgment Interest and Compensatory Damages.

Judge Tharp did not commit clear error in determining how to allocate Hytera's payments towards the civil judgment. First, all

34

parties agree that Judge Tharp properly found the first $47 million Hytera paid Motorola offset interest. A423:21–23; Pet.24; A681.

Judge Tharp next decided that Hytera's payments towards the compensatory portion of the judgment would precede its payments towards punitive damages, A424:2-7, comporting with how Hytera had expressly directed its payments. A750-55. Motorola now claims for the first time that Judge Tharp lacked the power to make this finding, saying he was limited to allocating any payments in excess of interest according to "how the civil judge [Judge Pacold] intended to allocate payments." Pet.24. But Motorola has invited this purported error, or at a minimum waived its argument, by arguing the opposite in the district court. *Cf.* VIS at 31("The Court will ... be able to evaluate [at sentencing] what amounts Hytera has paid, and whether (and to what extent, if so) that should be credited towards restitution.); *United States v. Addison*, 803 F.3d 916, 919 (7th Cir. 2015)("[W]here error is invited, not even plain error permits reversal."); *United States v. Hernandez*, 44 F.4th 1053, 1057 (7th Cir. 2022)("Arguments not properly preserved during sentencing are either forfeited or waived."); 18 U.S.C. §3771(d)(3).

Moreover, it was Judge Tharp's responsibility to evaluate the

35

value of any property returned as part of the sentencing process. *United States v. Robers*, 698 F.3d 937, 943 (7th Cir. 2012)("The MVRA directs the court to offset the loss by 'the value (as of the date the property is returned) of any part of the property that is returned.'"). Neither Motorola nor the government cite law to suggest that Judge Pacold had the authority to make this determination in the criminal case. Nor could they.

And Judge Tharp's decision to credit Hytera's allocation was proper. The common-law rule is that "[a] debtor who, owing money to a creditor on two or more debts, makes a voluntary payment to the creditor is permitted to allocate the payment among the debts." *Stevens v. United States*, 49 F.3d 331, 334 (7th Cir. 1995); *see also Nat'l Bank of Commonwealth v. Mechanics' Nat'l Bank*, 94 U.S. 437, 439 (1876) ("the debtor or party paying the money may, if he chooses to do so, direct its appropriation."); *accord First Wis. Fin. Corp. v. Yamaguchi*, 812 F.2d 370, 374 (7th Cir. 1987).

Judge Tharp also determined that "punitive damages should be a lower priority than the payment of compensatory damages." A424:5–7. This too was well within his discretion. *Mechanics' Nat'l Bank*, 94 U.S. at 439 (permitting allocation within court's "own

36

notion of justice"); *In re Matheson Flight Extenders, Inc.*, 673 B.R. 436, 443 (Bankr. E.D. Cal. 2025) ("Justice and equity favor allocation of punitive damages to the inferior position."), *rev'd on other grounds*, WL 1283579 (B.A.P. 9th Cir. May 11, 2026).

In any event, as money is fungible, even a payment denominated as "punitive" will reimburse Motorola for its losses, as Judge Tharp found and the government repeatedly agreed. A87:20-21(government acknowledging that "a punitive damage award" goes to "making the victim whole."); A88:3(district court noting "a dollar is a dollar."); A349:11(government acknowledging "[m]oney is fungible"). And neither of the cases cited by Motorola support the proposition that punitive damages do not compensate a victim. Pet.23; *Shepard*, 269 F.3d at 887 (losses sustained by non-victims are not recoverable as restitution); *Newman*, 144 F.3d at 538 (retroactive application of the MVRA does not violate Ex Post Facto Clause). Judge Tharp did not abuse his discretion in taking the Government at its word in allocating Hytera's payments.

## III. JUDGE THARP DID NOT CLEARLY ERR WHEN DEDUCTING $70 MILLION IN INCREMENTAL COSTS FROM MOTOROLA'S LOST PROFITS.

Judge Tharp correctly concluded that Motorola's lost profits

should be reduced by $70 million because Motorola would have incurred additional management and research-and-development costs in making additional sales in the but-for world where Hytera had not misappropriated Motorola's information. A412:9–21. It is undisputed that the costs a company would have incurred in selling additional units are properly deducted when calculating lost profits. *e360 Insight, Inc. v. Spamhaus Project,* 658 F.3d 637, 647–48 (7th Cir. 2011); *Hallmark Ins. Adm'rs, Inc. v. Colonial Penn Life Ins. Co.,* 990 F.2d 984, 989 (7th Cir. 1993).

Motorola and the government argue that Judge Tharp committed clear error for two reasons. First, they complain that Judge Tharp erred by allowing Hytera to file a purportedly untimely motion to reconsider. Pet.10-11, Gov.11-12. But neither Motorola nor the government objected below to the timing of Hytera's motion for reconsideration, or even asked for leave to file a response, thereby waiving any objection on appeal. *Hernandez,* 44 F.4th at 1057; 18 U.S.C. §3771(d)(3). Regardless, the district court did not abuse its discretion in either considering or granting Hytera's motion for reconsideration. A363:6-7, A412:9-413:21; *United Cent. Bank v. KMWC 845, LLC,* 800 F.3d 307, 309 (7th Cir. 2015).

38

Second, Motorola and the government claim that Judge Tharp erred in concluding that neither the government nor Motorola responded to the expert testimony Hytera presented about the deductions. Pet.28-29; Gov.24-25. Judge Tharp did not err. Indeed, because neither Motorola nor the government responded in writing to Hytera's repeated objections about the necessary deductions,[3] Judge Tharp took it upon himself to review the civil record to learn Motorola's position during the civil case. A.365:23-366:17; A.369:21-370:17; A.371:9-13; A.376:2-15; A.381:15-383:7. In doing so, Judge Tharp saw that Motorola's expert in the civil case "contended that the increased management cost and research and development cost would not be significant," A413:10–12, which led Judge Tharp to initially deny Hytera's requested reduction, A412:6-8.

It was only after Hytera explained that Judge Norgle had *rejected* Motorola's position in the civil case (A847) that Judge Tharp recognized Hytera's expert "has submitted a quantitative analysis [in

---

[3] Hytera objected to the failure to deduct management and research-and-development costs in its Defendant's Version, opening sentencing brief, A638, and Response to the Government's brief, SA35, as well as in its January 16, 2026 filing, A858-60.

the criminal case] that rebuts [Motorola's] claim [from the civil case]." A413:12–14. Judge Tharp then found that Hytera's expert opinion "stands unchallenged" because there was an "absence of any quantitative challenge to that analysis" in the criminal case. A413:18–20. Judge Tharp was correct—neither the government nor Motorola had presented *any* evidence in the criminal case rebutting Hytera's expert argument.

But Judge Tharp's ruling did not rest entirely on Motorola and the government's failure to offer countervailing expert submissions (although it could have). Instead, Judge Tharp engaged extensively with the record evidence, including by probing at length the methodological choices made by Hytera's expert and the evidentiary bases for her calculations. A365:23–366:17; A369:21–370:17; A371:9–13; A376:2–15; A381:15–383:7. Ultimately, Judge Tharp credited the quantitative econometric analysis of Hytera's expert in the criminal case over the conclusory opinion of Motorola's expert from the civil case and made corresponding factual findings. A414:3–5.

When presented with "a case of dueling experts," deciding "how to weigh the competing expert testimony" is exactly the sort of issue

"left to the trier of fact, not the reviewing court," *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008). The district court's resolution of this straightforward evidentiary dispute was not clearly erroneous.

## CONCLUSION

Hytera respectfully requests that this Court deny the writ of mandamus, dismiss Motorola's petition, and affirm the district court's decision that no further restitution is owed Motorola.

June 3, 2026

Boyd Cloern
Leah Quadrino
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000

Respectfully submitted,

<u>/s/ Rachel M. Cannon</u>

Rachel M. Cannon
(*Counsel of Record*)
Christopher S. Niewoehner
Brendan Hammond*
STEPTOE LLP
Suite 4700
227 W. Monroe Street
Chicago, IL 60606
312-557-1270
rcannon@steptoe.com

*application for admission
forthcoming

*Counsel for Respondent Hytera
Communications Corporation Ltd.*

41

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Respondent Hytera Communications Corp. Ltd., furnishes the following in compliance with Federal Rule of Appellate Procedure 32 and Seventh Circuit Rule 32: I hereby certify that this brief conforms to the rules contained in Seventh Circuit Rule 32 for a brief produced with a proportionally spaced font. The length of this brief is 7,717 words.

Dated: June 3, 2026

/s/  Rachel M. Cannon
Rachel M. Cannon
(*Counsel of Record*)
STEPTOE LLP
(312) 577-1270

## CERTIFICATE OF SERVICE

I certify that on June 3, 2026, I caused a true and correct copy of the foregoing response brief and supplemental appendix to be served via the Court's ECF system upon all counsel of record. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/  Rachel M. Cannon
Rachel M. Cannon
(*Counsel of Record*)
STEPTOE LLP
(312) 577-1270
